## Moore v. Erenrich

*David J. Flower,* for plaintiffs.
*Joseph Erenrich,* p.p., for defendant.

SHAULIS, J., June 24, 1977 —

## PLEADINGS

This equity case is before the court on a complaint filed by Robert G. Moore and Linda M. Moore, husband and wife, for specific performance of a contract for the sale of certain real estate. Defendant, Joseph Erenrich, without counsel, filed an answer denying certain allegations in the complaint.

## FINDINGS OF FACT

On November 11, 1976, defendant agreed to sell to plaintiffs a certain parcel of land situate in Somerset Township, Somerset County, Pa., containing 2.20 acres. On the same date, a check for down payment in the amount of $200 was given to defendant with the notation on the check "down payment on 2.20 acres of land" and a survey print was also given to defendant along with a deed description, and defendant agreed to sell the land for $4,000.

At the time this agreement was entered into, de-

fendant did not own the land in question, but had an option to purchase 21.615 acres of which this was a part, and had exercised his option by notifying the owner of his intention to exercise the option.

On December 31, 1976, defendant, who is a real estate broker, completed the purchase of the 21.615 acres by acquiring a deed and recording it. On the same date, he agreed with plaintiffs' counsel to a closing date of January 6, 1977, for the 2.20 acres.

In reliance on defendant's agreement to sell the 2.20 acres and after having made the down payment, plaintiffs secured a loan from First National Bank of Garrett on November 19, 1976, and placed the money in their checking account for the purpose of closing the transaction. Plaintiffs retained counsel and had the title to the property searched.

On January 5, 1977, defendant left word at the office of plaintiffs' counsel that he did not intend to go through with the closing the next day; and on January 6, 1977, defendant placed the down payment check in the attorney's mail box in the prothonotary's office. Thereafter, plaintiffs made demand on defendant to deliver a deed, but defendant refused and hence this suit.

## DISCUSSION

Defendant denies that a contract existed for the sale of the 2.20 acres to plaintiffs and attempts to raise several defenses.

He first contends that since no formal agreement of sale was signed, there is no contract; secondly, he maintains that since at the time he accepted the down payment he merely had an option to purchase the larger tract, and, therefore, lacked capacity to contract for the sale of the lesser amount.

While defendant did not plead the statute of

frauds in his answer, he attempted to argue at the trial that if there was a contract, it was unenforceable because it did not comply with the statute of frauds.

We find no merit in any of defendant's contentions.

In the first place, while there was no formal written contract, there was ample evidence of an enforceable contract. Defendant accepted a check in the amount of $200 as a down payment with a notation on the check as to its purpose and setting forth the acreage to be conveyed. The check was accompanied not only with a survey print of the land to be conveyed, but with a legal description and the names of the parties to whom it should be conveyed. There is no dispute as to the purchase price of $4,000 and no concern about prorating taxes since the deed was to be delivered shortly after the first of the year, which is the new tax period. There is a well-established custom in this county that transfer taxes are to be split equally between the seller and buyer, absent any agreement to the contrary.

16 P.L.E., §51, 476, sets forth the following:

"The statute of frauds does not designate the form of memorandum in writing necessary to satisfy its requirements, and as a general rule, no particular form is required to constitute a sufficient memorandum as required by the statute. Thus, any note or memorandum in writing which indicates the intention of the parties and which is sufficiently precise to enable a reader to ascertain the terms of the agreement is generally considered sufficient.

"As stated in Corbin on Contracts, the purpose of the statute of frauds 'is the prevention of successful fraud by inducing the enforcement of contracts that

were never in fact made. It is not to prevent the performance or enforcement of oral contracts that have in fact been made; it is not to create a loophole of escape for dishonest repudiators'."

Defendant does not deny the terms of the agreement, including the fact that a date for closing was set, but maintains that since he didn't cash the down payment check, he hadn't accepted plaintiffs' offer to purchase. This is clearly an attempt on the part of defendant to use what he thinks is a loophole to repudiate the contract. This court is convinced that there is no serious possibility of consummating a fraud by enforcement of this contract, and, to the contrary, we would be condoning dishonest repudiation if we refused to enforce this agreement.

These plaintiffs have, in good faith, changed their position in reliance on this contract. They have expended money for legal fees in having the title searched; they have incurred an obligation at the bank, including the payment of interest; and they have foregone the construction of a home to their financial detriment in this increasing cost market.

Defendant was encouraged to seek legal counsel in this case but refused, choosing to rely on his knowledge of the law, and he has failed to file a necessary pleading if he wants to rely on the statute of frauds.

The Pennsylvania Rules of Civil Procedure provide two methods for raising the statute of frauds as a defense. Generally, it must be raised as new matter. However, if it is a nonwaivable statute of frauds which bars or destroys the right of action and the applicability of which appears on the face of the complaint or counterclaim, the defense may also be raised by demurrer.

Relevant portions of the Pennsylvania Rules of Civil Procedure are as follows:

"Rule 1017. Pleadings Allowed.

"(b) Preliminary objections are available to any party and are limited to . . .

"(4) a demurrer which may include the bar of a nonwaivable statute of limitations or frauds which bars or destroys the right of action and the applicability of which appears on the face of the complaint or counterclaim."

"Rule 1030. New Matter.

"All affirmative defenses, including but not limited to the defenses of accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, immunity from suit, impossibility of performance, laches, license, payment, release, res judicata, and waiver and, unless previously raised by demurrer and sustained, the defenses of statute of frauds and statute of limitations, shall be pleaded in a responsive pleading under the heading 'New Matter.' A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading."

"Rule 1032. Waiver of Defenses. Exceptions.

"A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, except

"(1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and the objection of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and

"(2) that whenever it appears by suggestion of the

parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall dismiss the action."

"Rule 1045. Answer. Appearance. Reply.

"(b) All affirmative defenses, including but not limited to those enumerated in Rule 1030, and the defenses of consent, qualified privilege, fair comment, truth, and justification, and unless previously raised by demurrer and sustained the defenses of statute of limitations and statute of frauds shall be pleaded under the heading 'New Matter.' A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading. The defenses of contributory negligence and assumption of risk need not be pleaded. A plaintiff who fails to file a reply to averments of the defendant's new matter shall be deemed to admit all such averments other than averments relating to contributory negligence or assumption of risk."

The statute of frauds relating to realty has been held to be a "waivable" defense which can be raised only in new matter: Charles v. Henry, 460 Pa. 673, 334 A. 2d 289 (1975); Royal Oil & Gas Corp. v. Tunnelton Mining Co., 444 Pa. 105, 282 A. 2d 384 (1971); Portnoy v. Brown, 430 Pa. 401, 243 A. 2d 444 (1968). Failure to raise the statute of frauds as an affirmative defense acts as a waiver: Long v. National Bank & Trust Co. of Central Pa., 89 Dauph. 238, 18 Fiduc. Rep. 325 (1968).*

With respect to defendant's allegations that he lacked capacity to convey or enter into an agreement because he did not actually own the land at

---

*Editor's Note: See Spickler v. Lombardo, 32 Somerset 16 (1976).

the time he accepted the down payment, we can only say that he had already given notice on October 21, 1976, of his intention to exercise the option which gave him certain incidents of ownership and that he had full ownership prior to the date set for closing.

To allow defendant to repudiate the contract on the basis that he was not the owner of the land would be to condone an outright fraud on plaintiffs because at the time of this agreement, defendant held himself out as the owner with capacity to contract.

## CONCLUSIONS OF LAW

1. The Court of Common Pleas of Somerset County, Pa., sitting in equity, has jurisdiction over the subject matter and the parties.

2. There was a valid agreement of sale for the real property which agreement complies with the statute of frauds and is, therefore, enforceable by the court.

3. Defendant breached the said contract by refusing to comply with the real estate agreement.

4. In the sale of land, it is recognized that each property is unique and not readily valued in monetary terms, and plaintiffs do not have an adequate remedy at law.

5. Plaintiffs are entitled to specific performance of their contract.

## DECREE NISI

Now, June 24, 1977, it is ordered and decreed that:

1. Defendant convey to plaintiffs by good and sufficient general warranty deed, the 2.20 acres

mentioned in the complaint and described in survey print, plaintiffs' Exhibit "A."

2. The court retains jurisdiction of this matter to ascertain that the decree of court is obeyed and for the assessment of damages, if necessary.

3. Defendant is enjoined from selling, conveying to anyone other than plaintiffs, or in any way encumbering the parcel of land herein ordered to be conveyed to plaintiffs.

4. Defendant shall pay the record costs.

Unless exceptions are filed within 20 days, this decree nisi shall be entered by the prothonotary on praecipe as the final decree, sec. reg.

## OPINION ON EXCEPTIONS

Before: COFFROTH, *P.J.*, and SHAULIS, *J.*

SHAULIS, *J.*, August 9, 1977 — This case is before the court en banc on defendant's exceptions to the adjudication of June 24, 1977, ordering defendant to convey a certain piece of property to plaintiffs. After hearing arguments on the exceptions and making a thorough review of the record, we conclude there is no merit in any of the exceptions.

We will not discuss again the matters covered in the opinion accompanying the adjudication. However, we think it appropriate to mention defendant's reliance in his exceptions on a statement concerning closing costs in Highlands v. Erenrich, 29 Somerset 103 (1973). In that case, the court (Coffroth, *P.J.*) found in favor of defendant Erenrich after plaintiff claimed that a series of letters formed a contract to convey. The key fact was that a final letter from plaintiff brought up the matter of payment of closing costs for the first time, plaintiff

suggesting they be split equally. The court said that since the law would not have implied equal division of closing costs, the letter was the introduction of a new term by plaintiff. The letter, then, was merely a further counter-offer by plaintiff rather than an acceptance of defendant's prior offer and formation of a contract. There simply was no contract: See Highlands at pages 109-110.

In the present case, we have found there was an offer and acceptance forming a contract with definite terms. This contract was based upon the agreement to convey for $4,000, the acceptance by defendant of a check for $200 as down payment with a notation on the check as to its purpose, and setting forth the acreage to be conveyed, and the receipt by defendant of a survey print of the land with a legal description and the name of the parties.

While there was no mention of the payment of closing costs, the missing term may be implied according to law. See 8 P.L.E. Contracts, §164, 209; Frickert v. Deiter Bros. Fuel Co., 464 Pa. 596, 347 A. 2d 701 (1975). As we noted in the opinion, in the absence of an express agreement, our local custom would split the transfer taxes. If there were no such local custom, the law would require closing costs to be paid by the vendor: See Ladner on Conveyancing in Pennsylvania (3rd ed. 1971) §§5:14, 5:15, 5:29.

Each case must rest on its own facts, and even though defendant Erenrich was the defendant in both the Highlands case and the present case, the facts of the two cases are distinguishable. In Highlands, there was no contract because there was an unresolved disagreement over closing costs. In Moore, there is a contract with no mention of closing costs. In the absence of an express agreement, closing costs will be handled according to local custom, if any, or by implication of law.

## ORDER

Now, August 9, 1977, defendant's exceptions are dismissed. The prothonotary shall enter the decree nisi of June 24, 1977, as the final decree.